# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 18-CV-1700(JFB);

JUSTIN ZAMANI,

Petitioner,

VERSUS

ATTORNEY GENERAL OF THE STATE OF NEW YORK,

Respondent.

**MEMORANDUM AND ORDER**
November 30, 2018

JOSEPH F. BIANCO, District Judge:

Justin Zamani ("Zamani" or "petitioner"), proceeding *pro se*, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in state court. (*See* Pet., ECF No. 1, at 5-10.)[1] On October 16, 2014, petitioner entered a guilty plea to two counts of Burglary in the First Degree, in violation of New York Penal Law § 140.30, and one count of Attempted Robbery in the First Degree, in violation of New York Penal Law §§ 110, 160.15. On September 24, 2015, petitioner was sentenced to a term of ten years of imprisonment, followed by five years of post-release supervision.

In the instant habeas action, petitioner challenges his conviction and sentence, arguing that he is entitled to habeas relief for the following reasons: (1) Fourth Amendment violations regarding the "illegal search and seizure" of his cellular phone; (2) fabricated testimony provided by law enforcement; (3) "[i]nadmissible evidence was intentionally going to be used [at] trial"; and (4) various grounds of ineffective assistance of counsel. (*See* Pet. at 5-10.) For the reasons set forth below, petitioner's request for a writ of habeas corpus is denied.

---
[1] The Court uses the pagination assigned by the electronic case filing system when citing to the Petition, ECF No. 1.

1

I.  BACKGROUND AND
    PROCEDURAL HISTORY

A. Background

The following facts are adduced from the underlying record and the instant petition.

Petitioner appeared with trial counsel, Joseph LoPiccolo, Esq., for a pre-trial suppression hearing on June 4, 2013 before Judge David J. Ayres of the Supreme Court of Nassau County, New York. (H. at 2.)[2] Before proceeding with testimony, the trial court reviewed the parameters of the suppression hearing, confirming the parties understood it was a *Huntley*, *Wade*, *Mapp*, and *Dunaway* hearing. (H. at 6-8.) The following exchange took place regarding the *Mapp* portion of the evidentiary hearing:

> The Court: And you mentioned - - just be more specific if you could for the purposes of the record on the scope of the Mapp hearing. What items are we talking about exactly?
>
> Mr. Walsh: Initially, Judge, the police, at the original scene where the defendant was apprehended were attempting to identify him. The defendant apparently didn't have identification on him. The defendant indicated that the identification was in his vehicle, which was parked some blocks away. The People allege that the defendant gave the police permission to go retrieve his ID from the vehicle. During the retrieval of that ID, the police made certain observations as to property contained in the vehicle, some I think it's basically a pellet gun or air soft pistol, some camouflage clothing and material. Later after the defendant was brought to the Third Squad, the police obtained a consent search form from the defendant to search the vehicle and actually seized that which had already been observed at least partially by the initial officers, and, in fact, the police went and seized certain items from the vehicle later in the day.
>
> The Court: And you had mentioned in chambers during our conference there was something with regard to items found on the defendant's person?
>
> Mr. Walsh: I'm sorry, yes, Judge. There is a cell phone that defendant had on his person at the time of his arrest that was taken from him along with his other property at the Third Squad. That phone was later the subject of a search warrant which would obviously not be part of the hearing, but the actual recovery and seizure of the phone would be part of the Mapp aspect.

(H. at 8-9.) The following witnesses testified at the hearing: Police Officer Scott Unterweiser and Police Officer Joseph Fernandes of the Village of Kings Point Police Department; Police Officer Joseph Franolich, Detective Sergeant Salvatore Scalone, and Detective Matthew O'Connell of the Nassau County Police Department. (H. at 11-158.)

Officer Unterweiser testified that on July 25, 2012, at approximately 8:30 p.m., he received a call to respond to 2 Stream Court

---

[2] Numbers in parentheses preceded by "H." refer to pages in the June 4, 2013 transcript of petitioner's pre-trial suppression hearing. (ECF No. 8-7.)

in the Village of Kings Point because a home alarm was triggered. (H. at 12.) Upon responding to the call, Office Unterweiser observed the front door open with trails of blood inside the home and heard Angela Schwimmer calling for help from inside the home. (H. at 13.) Angela Schwimmer, the homeowner, was visibly injured and bleeding from wounds to her head; she explained that she was asleep in bed when a "black male approximately six foot one to six foot two, approximately 220 pounds, wearing camouflage, woke her up and said he wanted $200." (H. at 13-14.) Angela Schwimmer did not see this man's face because he was wearing a mask, but was able to observe his skin tone because she saw his hands. (H. at 16, 18.) Angela Schwimmer was then struck on the head with what appeared to be a handgun and directed to the safe in her basement. (H. at 14-15.) She showed the intruder that the safe was empty, at which point he fled her home and she notified the police. (H. at 15.)

Officer Franolich, who was working the night of the incident, heard the notification for a burglary at 2 Stream Court and the description of the perpetrator. (H. at 20-21.) In response, Officer Franolich "began canvassing the area looking for any subject or any suspicious activity." (H. at 21.) During this canvas, Officer Franolich met up with Officer Moy and together they canvassed the surrounding areas, including the grounds of Great Neck North Middle School, which abuts the property of Angela Schwimmer's home. (H. at 22-23, 149.) Officers explained that Great Neck North Middle School is enclosed with a fence and marked with 'no trespassing' signs. (H. at 149-51.) While canvassing the middle school grounds, Officer Franolich located the petitioner standing on a secondary roof of the middle school. (H. at 23-24.) Petitioner is a white male and was "wearing a black type of athletic shirt long sleeve-ish, black shorts and green-colored sneakers." (H. at 25.) Officers asked petitioner why he was on the roof and "his initial reply was that he was exercising, and he gets an extra workout by climbing structures." (H. at 26.) Petitioner told Officer Franolich that he had been running on the middle school track, which officers learned was under construction and unusable at the time. (H. at 26-27.) Officer Franolich asked why petitioner chose this location for exercise and petitioner responded that his father lives in Kings Point, however "[h]e couldn't indicate where his father lived" and "he hadn't really spoken to him in several years." (H. at 27.) After further investigation, school personnel "indicated that [petitioner] should not have been on school grounds, that he was, indeed, trespassing." (H. at 28.) Officers asked for identification and petitioner stated that it was in his truck, parked nearby. (H. at 30.) Petitioner then gave the officers permission to enter his truck to retrieve his ID, informing the officers of the location of the truck and where his ID could be found. (H. at 30.)

Officer Fernandes was one of the officers who went to petitioner's truck to obtain his ID; petitioner had indicated that his ID was in his wallet, which was in his backpack. (H. at 69.) Once at the truck, Officer Fernandes opened the back door and saw a camouflage vest draped over a backpack, a ski mask, and what appeared to be a black pellet gun inside the vest. (H. at 70-71, 84.) Upon opening the backpack, Officer Fernandes located petitioner's driver's license, a pair of camouflage pants, and military style boots. (H. at 70-71.) Once petitioner's ID was obtained, he was placed under arrest for trespassing and transported to the local precinct. (H. at 31.) During this transport, petitioner had his cellular phone on his person; upon arrival at the precinct, the phone was taken from petitioner. (H. at 32-36.)

3

Detective Scalone took part in the investigation of the Stream Court incident and responded to the middle school and the location of petitioner's truck. (H. at 87-96.) Subsequently, Detective Scalone went to the precinct to speak with petitioner; he read petitioner his Miranda rights, to which petitioner responded that he understood. (H. at 99-101.) Upon being asked why he was at the middle school, petitioner again stated that he was there to exercise, but when confronted with a photograph of the injured Angela Schwimmer, petitioner "kept [ ] shaking his head and saying, I didn't go in the house, I wasn't in the house, I didn't go in the house." (H. at 102-05.)

The day after the incident, Detective O'Connell was assigned to do a "follow-up canvas" of the area surrounding the incident location. (H. at 123.) During this canvas, Detective O'Connell spoke to construction workers at the Great Neck North Middle School, one of whom informed him that the day prior he saw a dark-colored truck parked in the area, with a white male seated in the driver's seat. (H. at 125-27.) The construction worker saw the truck parked in the area for several hours, during which the male individual was frequently using his phone. (H. at 128.) Detective O'Connell then prepared a photo array containing six photographs; the construction worker identified the petitioner in the array as the male he saw seated in the truck the prior day. (H. at 129-39.)

After the prosecution presented the evidence at the suppression hearing, both defense counsel and the prosecution made closing arguments. (H. at 162-79.) Ultimately, the trial court denied petitioner's motion to suppress in its entirety. (H. at 187.) The trial court determined that the property found in petitioner's car was obtained pursuant to petitioner's consent and the property recovered from petitioner's person was retrieved pursuant to a valid search incident to a lawful arrest. (H. at 186-87.) When addressing the probable cause to arrest petitioner, the trial court stated:

> Based upon the totality of [the] information and the context of the circumstances of the occupied burglary, officers were in possession of information which would lead a reasonable person who possesses the same expertise as the officers to conclude under the circumstances that a crime or offense is or was committed in their presence and that it was more probable than not that the defendant was the person who committed the crime or offense in question. In fact, had no burglary occurred and the defendant was found on the roof of a school, given the fact that he had no legitimate reason for being there, the officers at that moment had ample probable cause to arrest the defendant for the offense of trespass . . . [o]ther factors also make it reasonable to have arrested the defendant at least circumstantially for a relationship to the burglary, but in light of Court's determination with regard to the criminal trespass offense, those issues need not be arrived at here.

(H. at 184-85.) On October 14, 2014, petitioner appeared with counsel for trial before Judge David P. Sullivan in the Supreme Court of Nassau County. Prior to jury selection, defense counsel made the following arguments regarding the admission of petitioner's text messages:

> I believe the People are going to seek to introduce a series of text messages.

4

* * *

> That purports to be a conversation between Javon [ ] Zachary and Justin Zamani. It's downloaded from the phone that was recovered from Mr. Zamani. Judge, while I understand there may be some basis to put this into evidence, the problem is, number one, it's hearsay, especially the statements made by, allegedly, Javon Zachary in this text message. Secondly, I can't confront Javon Zachary about the content of those text messages so there's a confrontation-clause issue because Mr. Zachary will not be testifying in this trial. Thirdly, the People, while attempting to bring in these statements, are going to then try and argue from those statements what you can imply from them and I submit to your Honor in a case of this nature where something is circumstantial, okay, they can't even prove directly that the defendant was in conversation with Javon Zachary. They can show a phone was contacting a phone. They cannot show the person who was texting from either phone.

(T. at 13-14.)[3] In response, the prosecution argued:

> The purpose of the People seeking to introduce those text messages is to establish the relationship between [petitioner] and the co-defendant Mr. Zachary, who are alleged to have committed this incident together. Under the aiding and abetting theory the People do need to show that [petitioner] had knowledge, intent, the motive, that he assisted in the preparation and planning of the event and that relationship between him and Mr. Zachary is reflected in the text messages from his own phone. It does show their history, their relationship. The dates that Mr. Zachary came up correspond with the dates that those text messages were sent. And, in addition, Mr. Zachary's cell site and cell phone records do corroborate the fact that he is in the area on those dates and times in question.

(T. at 17.) The trial court made a preliminary ruling that the text messages "if properly authenticated, will be permitted into evidence." (T. at 20.) Additionally, defense counsel argued that a detective would testify that when he accessed petitioner's phone, a map application had the incident address typed into it. (T. at 23.) These contents were not preserved, thus defense counsel sought their preclusion. (T. at 23.) Ultimately, the trial court ruled that the witness could testify regarding viewing the map application and defense counsel could cross-examine regarding the issues he raised. (T. at 32.)

On October 15, 2014, the trial court began jury selection. (T. at 40.) However, on October 16, 2014, instead of continuing with jury selection, petitioner informed the trial court that he wished to enter a guilty plea. (P. at 5.)[4] Prior to proceeding with the guilty plea, the prosecutor informed the trial court that its recommendation was a sentence of twenty-years' imprisonment, due to the "nature of the crime that was committed and the injury that was done to the victim in her home." (P. at 5.) The court stated that its

---

[3] Numbers in parentheses preceded by "T." refer to pages in the October 14, 15, 2014 transcript of petitioner's trial. (ECF No. 8-8.)

[4] Numbers in parentheses preceded by "P." refer to pages in the October 16, 2014 transcript of petitioner's plea proceeding. (ECF No. 8-9.)

offer was a ten year sentence, to run concurrently with a one-and-a-third to four year sentence for petitioner's violation of probation, with no appeal waiver. (P. at 5.) The court explained its reasons for the lesser sentence, stating "[a]lthough the case speaks for itself, the defendant did not, himself, actually go in and physically touch the victim" and the victim was aware of and satisfied with this potential sentence. (P. at 6.)

The court then ensured that petitioner was competent to proceed and had discussed his case with counsel prior to entering the plea. (P. at 5-8.) The court reviewed the constitutional rights petitioner was forfeiting by choosing to plead guilty. (P. at 9.) Petitioner stated that he was not threatened to plead guilty and that no promises had been made to coerce his guilty plea. (P. at 9, 11.) Petitioner than admitted to all of the criminal conduct contained in the indictment, including that he "individually and aiding and abetting and being aided and abetted by Javon Zachary, on or about the 25th day of July, 2012, in the County of Nassau, State of New York, knowingly enter[ed] unlawfully into a dwelling with the intent to commit a crime therein and when in effective entry or while in the dwelling or the immediate flight therefrom Javon Zachary caused physical injury to the homeowner, Angela Schwimmer, and she was not a participant in the crime," as well as to charges for the co-defendant's display of what appeared to be a handgun and for attempting to steal property from the victim's person. (P. at 12-13.) The trial court, satisfied with the allocution, stated the following:

> The Court is satisfied defendant understands the nature of the charges, the nature of the plea and the possible consequences of his plea, that he's discussed his legal rights with his attorney, that defendant understands he's waiving his Constitutional rights and that the plea is voluntary and of his own free will. Court is further satisfied the defendant has acknowledged his guilt and the Court believes it's in the interests of justice to accept the plea from this defendant.

(P. at 14.) The trial court adjudicated petitioner as a prior felony offender and accepted petitioner's guilty plea. (P. at 15-16.)

On May 15, 2015, petitioner filed a motion to withdraw his guilty plea. (*See* Mot. to Withdraw, ECF No. 8-10 at 2-7.)[5] Petitioner argued that he should be permitted to withdraw his plea "as it was not voluntarily, knowingly, and intelligently made." (Mot. to Withdraw at 4.) Specifically, petitioner alleged that records show his phone was illegally searched, as it was accessed after petitioner was in police custody but before a search warrant was issued. (Mot. to Withdraw at 4-6.) Petitioner then claimed that trial counsel was ineffective for not seeking to suppress the contents of the phone or asking for the suppression hearing to be re-opened. (Mot. to Withdraw at 6.) Additionally, petitioner stated that he felt coerced by trial counsel to enter a guilty plea. (Mot. to Withdraw at 7.)

On August 21, 2015, the prosecution filed a response to petitioner's motion, arguing that petitioner's guilty plea was knowing and voluntary, the search warrant for his cellular phone was validly obtained, and petitioner's claims of ineffective assistance of counsel were contradicted by his attorney's

---

[5] The Court uses the pagination assigned by the electronic case filing system when citing to the petitioner's motion to withdraw his guilty plea. (ECF No. 8-10.)

performance and the underlying record. (*See* Resp.'s Opp. to Mot. to Withdraw, ECF No. 8-11 at 3-6.) On September 8, 2015, petitioner filed an additional response in further support of his motion to withdraw. (*See* Pet.r's Reply to Mot. to Withdraw, ECF No. 8-12.) On September 24, 2015, the trial court denied petitioner's motion to withdraw his guilty plea. (*See* Trial Court Order, ECF No. 8-13.) The trial court found that petitioner's claim regarding the validity of his plea was "belied by both the record of the plea . . . as well as the reasonableness of the defendant's bargained for plea and sentence commitment." (Trial Court Order at 1.) Further, the trial court determined that the record shows that petitioner received effective assistance of counsel. (*Id*. at 2.) Regarding petitioner's allegations that the cellular phone was improperly obtained, the trial court stated that it "is of no merit . . . and in no way diminished the meaningful representation afforded the defendant by his trial counsel." (*Id*.)

On September 24, 2015, petitioner appeared in the Supreme Court of Nassau County for sentencing. (S. at 2.)[6] Before the sentence was imposed, the petitioner made a statement on his own behalf. (S. at 4-17.) Subsequently, the trial court imposed the promised sentence of ten years of imprisonment followed by five years of supervised release. (S. at 18.)

B. Procedural History

1. Direct Appeal

On July 28, 2016, petitioner appealed to the Second Department of the New York State Appellate Division. On appeal, petitioner argued that he received ineffective assistance of counsel when his attorney allowed him to enter a plea without seeking suppression of the cellular phone evidence. (*See* App. Div. Br., ECF No. 8-1 at 9-17.) Further, petitioner claimed that his guilty plea was rendered invalid as his attorney failed to advise him that the cellular phone evidence may have been suppressed by the trial court. (*See* App. Div. Br. at 18-24.) On December 28, 2016, the Second Department affirmed the trial court's judgment. *See People v. Zamani*, 145 A.D.3d 1046 (N.Y. App. Div. 2d Dep't 2016). As to petitioner's ineffective assistance of counsel claim, the Second Department stated that "it is not evident from the matter appearing on the record that the defendant was deprived of the effective assistance of counsel as it relates to the voluntariness of his plea," instructing that "a CPL 440.10 proceeding is the appropriate forum for reviewing the claim in its entirety." *Id*. at 1047. Additionally, the Second Department found that petitioner "knowingly, voluntarily, and intelligently entered his plea of guilty" and thus upheld the trial court's denial of petitioner's motion to withdraw his guilty plea. *Id*. Petitioner sought leave to appeal to the New York Court of Appeals; leave to appeal was denied on March 2, 2017. *People v. Zamani*, 29 N.Y.3d 954 (N.Y. 2017).

2. The Instant Petition[7]

On March 1, 2018, petitioner moved before this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Pet. at 5-10.)

---

[6] Numbers in parentheses preceded by "S." refer to pages in the September 24, 2015 transcript of petitioner's sentencing proceeding. (ECF No. 8-14.)

[7] In the instant habeas petition, petitioner claims he raised his fabricated evidence claim and ineffective assistance of counsel claim in a N.Y. CPL § 440.10 motion filed in state court, which was denied. (*See* Pet. at 7-8, 10-11.) However, as respondent suggests, when reviewing the dates petitioner puts forth in relation to the state court submission, it is clear that what petitioner refers to as his N.Y. CPL § 440.10 motion is in fact his motion to withdraw his guilty plea.

Petitioner contends that he is entitled to habeas relief as: (1) the search and seizure of his cellular phone violated the Fourth Amendment; (2) law enforcement provided fabricated testimony; (3) the prosecution was going to use inadmissible evidence at trial; and (4) he received ineffective assistance of counsel when his attorney failed to adequately investigate the case, seek preclusion of the "illegally searched cell phone," "request to re-open the suppression hearing," and "prepared [n]o defense." (Pet. at 5-10.)

On June 1, 2018, respondent filed a response arguing, "none of [petitioner's] claims were properly raised and exhausted in state courts" and are without merit. (*See* Resp.'s Br., ECF No. 8 at 15-32.)[8]

The Court has fully considered the submissions and arguments of the parties.

## II. STANDARD OF REVIEW

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decisions applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required … the

---

[8] The Court uses the pagination assigned by the electronic case filing system when citing to the respondent's opposition to the petitioner for a writ of habeas corpus. (ECF No. 8.)

increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id*. (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

### III. DISCUSSION

#### A. Procedural Requirements

##### 1. Exhaustion

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 n.3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quotation marks omitted) (alteration in original)).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must "fairly present" his claims in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191-92 (citing *Picard*, 404 U.S. at 276; *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id*. at 192 (footnote omitted).

##### 2. State Procedural Requirements

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the

petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (emphasis omitted).

Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those claims are now to be deemed exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citing *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)). Therefore, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'" *Reyes*, 118 F.3d at 139 (quoting *Grey*, 933 F.2d at 120).

However, "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted [on] those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman*, 501 U.S. at 744-51).

The procedural bar rule in the review of applications for writs of habeas corpus is based on the comity and respect that state judgments must be accorded. *See House v. Bell*, 547 U.S. 518, 536 (2006). Petitioner's federal claims also may be procedurally barred from habeas corpus review if they were decided at the state level on adequate and independent grounds. *See Coleman*, 501 U.S. at 729-33.

Once a claim is determined to be procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Id*. at 750 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

B. Analysis

As a threshold matter, to the extent petitioner's claims do not relate to the validity of his guilty plea, but are attacks on antecedent constitutional violations, federal habeas relief is precluded. A petitioner who pleads guilty forfeits the right to argue issues collateral to the guilty plea. "State law treats a guilty plea as 'a break in the chain of events [that] preceded it in the criminal process.'" *Haring v. Prosise*, 462 U.S. 306, 321 (1983) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). Accordingly, a guilty plea "conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue." *United States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006). Once a defendant has admitted guilt, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett*, 411 U.S. at 267. As such, "'[t]he only proper focus of a federal habeas inquiry in such a situation is the voluntary and intelligent character of the guilty plea.'" *Amparo v. Henderson*, No. CV-86-4310, 1989 WL 126831, at *2 (E.D.N.Y. Oct. 18, 1989) (quoting *Isaraphanich v. United States*, 632 F. Supp. 1531, 1533

(S.D.N.Y. 1986)).

The well-established standard for determining the validity of a guilty plea is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). The Supreme Court has held that, under the Due Process Clause, a trial court can only accept a guilty plea which is "done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *United States v. Adams*, 448 F.3d 492, 497 (2d Cir. 2006) (quoting *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)); *accord Godinez v. Moran*, 509 U.S. 389, 400 (1993). Normally, a guilty plea may not be collaterally attacked because it constitutes an admission as to all elements of the charged crime. *Salas v. United States*, 139 F.3d 322, 324 (2d Cir. 1998). However, a defendant may challenge a guilty plea on the ground that it was not made knowingly and voluntarily. *United States v. Simmons*, 164 F.3d 76, 79 (2d Cir. 1998). A conviction that is based upon an involuntary plea of guilty is inconsistent with due process of law and is subject to collateral attack by federal habeas corpus. *McMann v. Richardson*, 397 U.S. 759, 772 (1970).

"A plea is considered 'intelligent if the accused had the advice of counsel and understood the consequences of his plea, even if only in a rudimentary way,' and it is considered 'voluntary if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.'" *Manzullo v. New York*, No. 07 CV 744(SJF), 2010 WL 1292302, at *5 (E.D.N.Y. Mar. 29, 2010) (quoting *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988)). Indeed, a "plea of guilty entered by one fully aware of the direct consequences of the plea is voluntary in a constitutional sense unless induced by threats, misrepresentations, or perhaps by promises that are by their nature improper." *Bousley v. United States*, 523 U.S. 614, 619 (1998) (internal alterations and citations omitted).

The Court has reviewed the state court record of petitioner's guilty plea and finds that it reflects a knowing and voluntary plea. During his plea proceeding, petitioner confirmed he understood the consequences of entering a guilty plea, that he had not been threatened to plead guilty, and engaged in a thorough factual allocation. (P. at 9-15.) Giving weight to petitioner's statements during his guilty plea allocution, the Court finds the plea valid and agrees with the state court's determination that "the record reflects that the defendant knowingly, voluntarily, and intelligently entered his plea of guilty." *Zamani*, 145 A.D.3d at 1047. Thus, petitioner has waived his right to challenge aspects of his representation that are unrelated to the validity of the guilty plea itself, which petitioner attempts to do throughout his Fourth Amendment claim, fabricated evidence claim, and ineffective assistance of counsel claims. Notwithstanding the fact that the aforementioned claims are improper due to petitioner's valid guilty plea, the Court proceeds to address all claims.

1. Fourth Amendment

a. Exhaustion

Petitioner's Fourth Amendment claim first appears in the instant habeas petition.[9]

---

[9] The Court acknowledges that the petitioner references the improper search and seizure of his cellular phone in relation to other claims raised in his state court appeal. However, the claim in the state court appeal is not

"The burden of proving exhaustion lies with the habeas petitioner." *Cartagena v. Corcoran*, No. 04-CV-4329 (JS), 2009 WL 1406914, at *3 (E.D.N.Y. May 19, 2009). Accordingly, this claim was not adequately raised in "the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan*, 513 U.S. at 365 (internal quotations marks and citations omitted). The claim is not properly exhausted, as petitioner did not "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. Though petitioner may have suggested that the search of his cellular phone was improper, he did not argue that a Fourth Amendment violation entitled him to relief until the instant petition and thus did not "fairly present[ ]" the claim because he did not "inform[ ] the state court of both the factual and the legal premises of the claim he asserts in federal court." *Jones*, 329 F.3d at 295 (internal quotation marks and citation omitted).

Moreover, when a claim in a federal habeas petition has not been exhausted, the federal court may conclude that no available procedures remain in state court by which a petitioner may exhaust this claim. *See* 28 U.S.C. § 2254(b); *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001). "In such a case the habeas court theoretically has the power to deem the claim exhausted." *Aparicio*, 269 F.3d at 90 (citing *Reyes*, 118 F.3d at 139.) In the instant matter, petitioner no longer has state remedies available with respect to his record-based Fourth Amendment claim because New York's procedural rules prevent him from raising this claim in a successive direct appeal in New York state court. *See Moss v. New York*, No. 10-CV-5840 (SJF), 2014 WL 585928, at *9 (E.D.N.Y. Feb. 12, 2014) (citing N.Y. CPL § 440.10(2)(c) (barring review of claims that could have been raised on direct appeal)); *see also St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir. 2004) ("[T]he failure to have raised the claim on direct review now forecloses further collateral review in state court."); *Aparicio*, 269 F.3d at 91 ("New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal."). Therefore, the Court finds this claim procedurally defaulted.

Additionally, petitioner is unable to overcome this procedural default as he has not shown cause for failing to properly raise this claim, nor prejudice or a miscarriage of justice if the Court does not review the claim. *See Coleman*, 501 U.S. at 750. In sum, petitioner is barred from obtaining habeas relief on this ground.

b. Merits

In an abundance of caution, the Court addresses the merits of this claim, finding that it does not provide a basis for habeas relief.

Petitioner argues that his Fourth Amendment rights were violated when his cellular phone was illegally searched and seized. (*See* Pet. at 5.) It is well-settled that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976). The Second Circuit has further explained that, under *Powell*,

---

framed as a Fourth Amendment claim, as in the instant petition.

review of fourth amendment claims in habeas petitions would be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.

*Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977) (*en banc*)).

With respect to the first prong, it is clear that New York has adequate corrective procedures for litigating Fourth Amendment claims, which are set forth in N.Y. CPL § 710.10 *et seq. See, e.g.*, *Capellan*, 975 F.2d at 70 n.1 ("[T]he 'federal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate.'" (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989))); *McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69 (2d Cir. 1983) (New York's procedure for litigating a Fourth Amendment claim in a criminal trial complied with requirement that state provide an opportunity to litigate such claims).

As New York State provides an adequate statutory mechanism for reviewing Fourth Amendment claims, petitioner must show that an "unconscionable breakdown" occurred. Courts have held that such a breakdown occurs when the state court "failed to conduct a reasoned method of inquiry into the relevant questions of fact and law." *Capellan*, 975 F.2d at 71 (internal quotation marks and citations omitted). In *Capellan*, the Second Circuit gave examples of "the sort of disruption or obstruction of a state proceeding typifying an unconscionable breakdown." *Capellan*, 975 F.2d at 70 (internal quotation marks omitted). The Second Circuit suggested that an unconscionable breakdown might occur if, for example, the trial court "yield[ed] to mob intimidation of the jury" or if "the process furnished was 'claimed to be meaningless [because] the totality of state procedures allegedly did not provide rational conditions for inquiry into federal-law ... questions.'" *Id.* (quoting Paul M. Bator, Finality in Criminal Law and Federal Habeas Corpus Review for State Prisoners, 76 Harv. L. Rev. 441, 456-57 (1963)) Additionally, "the court cannot say that it is an 'unconscionable breakdown' of the state's process that a [petitioner], who fails to raise a claim when he is initially given an opportunity for full and fair review, is not afforded a *second* chance to attack the same evidence on a different legal theory." *Cappiello v. Hoke*, 698 F. Supp. 1042, 1051 (E.D.N.Y. 1988) (emphasis in original).

Additionally, the Court notes that to the extent that petitioner is claiming that the state court erred in failing to suppress evidence due to an improper search or improper arrest charges, "[a] state court's erroneous ruling on an issue of state evidentiary law rises to a federal constitutional violation only if the error deprived the defendant of a *fundamentally fair* trial." *Crawford v. Artuz*, 165 F. Supp. 2d 627, 635 (S.D.N.Y. 2001) (emphasis in original).

In the instant matter, there is no evidence of an unconscionable breakdown in the underlying process. As discussed above, a full pre-trial suppression hearing was conducted by the trial court. After the hearing, the trial court found that law enforcement had reasonable cause to stop petitioner, probable cause to arrest petitioner, and validly recovered property from petitioner's car and his person. (H. at 182-

13

87.) In addition to the suppression hearing, the trial court entertained pre-trial arguments regarding the exclusion of certain evidence at trial. Defense counsel advocated for the exclusion of text messages from petitioner's phone, but the trial court ruled that, if the text messages were properly authenticated, they could be permitted into evidence. (T. at 13-20.) However, the evidence petitioner takes issue with was never introduced at trial as the proceedings stopped when petitioner voluntarily chose to enter a guilty plea. Additionally, prior to sentencing, defense counsel moved to withdraw the guilty plea, again raising issues with the evidence obtained from petitioner's cellular phone. (*See* Mot. to Withdraw at 6.) The trial court ruled that petitioner's "claims about information regarding the recovery of a cellular phone . . . [are] of no merit to this application and in no way diminish[ ] the meaningful representation afforded the defendant by his trial counsel." (*See* Trial Court Order at 2.)

In sum, the underlying record reveals that the state court conducted a reasonable and widely accepted method of inquiry into the relevant facts surrounding petitioner's arrest and the evidence recovered therefrom. Having fully availed himself of New York's proceedings regarding his Fourth Amendment claim, petitioner may not now raise this on federal habeas review. *See, e.g.*, *Garret v. Smith*, No. 05-CV-3374 (JFB), 2006 WL 2265094, at *8 (E.D.N.Y. Aug. 8, 2006).

2. Fabricated Testimony

Petitioner's claim that law enforcement provided fabricated testimony during the pendency of his case first appears in the instant petition. As this record-based claim was not raised in his state court appeal, petitioner failed to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. As discussed above, there are no longer state court remedies available as this claim should have been included in his direct appeal. Again, petitioner has not provided any explanation for his failure to raise this claim on direct appeal and has failed to demonstrate either prejudice or a miscarriage of justice resulting from a failure to review this claim. The Court determines that this claim is outside the scope of federal habeas review.[10]

3. Inadmissible Evidence at Trial

a. Exhaustion

Petitioner argues that the prosecution was going to present inadmissible evidence at trial and concedes that this claim was not alleged in any of his state court proceedings. (*See* Pet. at 8-9.) Therefore, it is clear that this claim was not fairly presented to "the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan*, 513 U.S. at 365 (internal quotation marks omitted). As petitioner has already completed his direct appeal process, there is no longer a state court remedy available to resolve this record-based claim. Petitioner claims that the reason he did not raise this claim in state court is: "[m]y knowledge of the law was very [l]imited as was my access to attain this knowledge." (Pet. at 9.) However, when "[t]he only ground [a] petitioner asserts as good cause for his failure

---

[10] In any event, petitioner has submitted no evidence to support this conclusory claim. Moreover, as noted *supra*, the claim is barred by his valid guilty plea.

14

to exhaust [a claim] is that he is an 'indigent layman' who is not versed in the law, [it] is insufficient to constitute good cause." *Terry v. Conway*, No. 11-CV-2647 (RRM), 2013 WL 4458734, at *3 (E.D.N.Y. Aug. 16, 2013).

### b. Merits

Petitioner's argument that "[i]nadmissible evidence was intentionally going to be used in trial" is entirely speculative considering petitioner pleaded guilty rather than proceeding to trial. (Pet. at 8.) The Court finds this claim "vague and conclusory" and does not provide a "sufficient bas[is] for habeas corpus relief." *Jones v. Poole*, No. 06 Civ. 7172 (NRB), 2007 WL 2456646, at *11 (S.D.N.Y. Aug. 21, 2007).[11] Moreover, "'a petitioner's speculative claim about the testimony of an uncalled witness is accorded little weight in federal habeas review.'" *Morgan v. Lee*, No. 10-CV-3954 (NGG)(RER), 2012 WL 12324986, at *6 n.10 (E.D.N.Y. Aug. 8, 2012) (quoting *Muhammad v. Bennett*, No. 96-CV-8430 (JSR)(HBP), 1998 WL 214884, at *1 (S.D.N.Y. Apr. 29, 1998)). Upon reviewing the substance of this claim, the Court finds that it does not provide a basis for habeas relief based on the record before the Court.

### 4. Ineffective Assistance of Counsel

### a. Exhaustion

Construing the petition liberally, petitioner has raised multiple grounds for ineffective assistance of counsel. Specifically, petitioner argues that he received ineffective assistance of counsel when his attorney failed to: (1) adequately investigate the incident; (2) seek preclusion of his illegally searched cellular phone; (3) request reopening the suppression hearing; and (4) generally prepare a defense. (*See* Pet. at 10.)

On direct appeal, the basis for petitioner's ineffective assistance of counsel claim was that his plea was rendered involuntary when his attorney "permitted [him] to plead guilty without challenging clearly suppressible text messages." (*See* App. Div. Br. at 13-17.) The state court denied petitioner's ineffective assistance of counsel claim, finding that this claim was "based, in part, on matter appearing on the record and, in part, on matter outside the record," and therefore, "a CPL 440.10 proceeding is the appropriate forum for reviewing the claim in its entirety." *Zamani*, 145 A.D.3d at 1047. Though petitioner did seek leave to appeal this denial to the New York State Court of Appeals, petitioner never sought collateral review of his conviction by filing a Section 440.10 motion and leave to appeal was denied. Petitioner then raises this as one of the ineffective assistance of counsel grounds in his habeas petition; however, this Court agrees with the trial court that the petitioner should have raised this in a Section 440.10 motion for it to be sufficiently reviewed by the state court. *See Anthoulis v. New York*, No. 11 Civ. 1908 (BMC), 2012 WL 194978, at *3 (E.D.N.Y. Jan. 23, 2012) ("[T]o properly exhaust an ineffective assistance of counsel claim that relies on evidence outside

---

[11] Within this argument, petitioner claims that: "the victim stated that I was not [t]he person in her house and none of the items in my truck were what the person was wearing, DA Mike Walsh [c]ontinued to use this evidence even after the medical examiner told him these items were not part of the criminal inv[estigation]." (Pet. at 8.) The Court rejects this argument; petitioner entered a guilty plea in which he admitted to acting in concert with another individual to commit all crimes included in the plea. Additionally, the petitioner's role in the criminal offense belies these arguments, as he remained outside the victim's home during the offense and he did not "actually go in and physically touch the victim." (P. at 6, 12-13.)

the pretrial and trial record, petitioner must raise it as part of a motion to vacate judgment under CPL § 440.10 and then seek leave to appeal to the Appellate Division.") Even if the Court found that these claims could have properly been raised on direct appeal, as is discussed at length above, no such state court remedy remains as petitioner has already exhausted his direct appeal process.

The remaining grounds of ineffective assistance of counsel all first appear in the instant habeas petition. As stated above, petitioner only satisfies the exhaustion requirement "if he has informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Jones*, 329 F.3d at 294-95 (internal quotation marks and citations omitted). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191-92. Therefore, none of petitioner's ineffective assistance of counsel claims were properly exhausted in state court.

However, unlike New York's procedure for direct appeal, a collateral attack on a conviction pursuant to Section 440.10 is permissible "[a]t any time after the entry of a judgment." *See* N.Y. CPL § 440.10. Therefore, though this Court has the discretion to issue a stay and allow petitioner time to fully exhaust his outside-the-record claims in state court while his habeas petition is held in abeyance, the Supreme Court has emphasized that this remedy of "stay and abeyance should be available only in limited circumstances." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). The Supreme Court emphasized:

> [S]tay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

*Id.* As stated prior, petitioner has provided no explanation for his failure to properly raise his claims in state court and the Court denies petitioner's unexhausted claims as they are plainly meritless for the reasons set forth below.

b. Merits

Petitioner claims that he received ineffective assistance of counsel when his attorney failed to: (1) adequately investigate the incident; (2) seek preclusion of the cellular phone evidence; (3) request reopening of the suppression hearing; and (4) prepare a defense. (*See* Pet. at 10.)

Under the standard promulgated by *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

The first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have

rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). "The performance inquiry examines the reasonableness of trial counsel's actions under all the circumstances," keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005) (O'Connor, J., concurring)). "In assessing performance, [a court] must apply a 'heavy measure of deference to counsel's judgments.'" *Id.* (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Id.* at 588 (quoting *Strickland*, 466 U.S. at 690). Moreover, "'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* (quoting *Strickland*, 466 U.S. at 690-91).

The second prong focuses on prejudice to the petitioner. The petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, "reasonable probability" means that the errors were of a magnitude such that they "undermine[ ] confidence in the [proceeding's] outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "'[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). The party alleging ineffective assistance of counsel bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

In the context of a guilty plea, the Second Circuit has stated that to demonstrate ineffective assistance of counsel, "a petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness," and that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Munson v. Rock*, 507 F. App'x. 53, 55-56 (2d Cir. 2013).

The Court proceeds to address each of petitioner's grounds for ineffective assistance of counsel and finds them all to be barred by his valid guilty plea and entirely without merit.

As a threshold matter, all of petitioner's grounds for ineffective assistance of counsel occurred prior to his guilty plea. As discussed prior, "a guilty plea represents a break in the chain of events," and a petitioner "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollet v. Henderson*, 411 U.S. 258, 267 (1973).

First, petitioner claims that his attorney was ineffective for failing to fully investigate, specifically alleging that his attorney should have hired an investigator, interviewed particular witnesses, and visited the incident

location. (*See* Pet., ECF No. 1-5, at 1.) Of course, "'[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Espinal v. Bennett*, 588 F. Supp. 2d 388, 399 (E.D.N.Y. 2008) (quoting *Lindstadt v. Keane*, 239 F.3d 191, 200 (2d Cir. 2001)). However, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and therefore petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal citations omitted). Additionally, "[s]elf-serving conclusory allegations" will not suffice "to establish ineffective assistance of counsel." *Sturdivant v. Barkley*, No. 04-CV-5659 (DLI), 2007 WL 2126093, at *7 (E.D.N.Y. July 24, 2007). Considering the totality of counsel's representation, petitioner has failed to show that the alleged errors amounted to ineffective assistance of counsel, particularly considering petitioner's decision to enter a guilty plea.

Additionally, petitioner contends that he received ineffective assistance of counsel when his attorney "did not seek preclusion [o]r suppression of the illegally searched cell phone, nor did he request to re-open the suppression hearing." (*See* Pet. at 10.)[12] The Court disagrees. Defense counsel was ultimately unable to exclude the cellular phone evidence, but he sought its exclusion by contesting the search of petitioner in the pre-trial hearing and again argued for its exclusion prior to commencing jury selection. Though petitioner may now disagree with the manner in which counsel sought to suppress relevant evidence, "strategic choices of trial counsel are virtually unchallengeable in habeas corpus proceedings." *Bonneau v. Scully*, Nos. 86 Civ. 270 (CSH), 86 Civ. 3901 (CSH), 1991 WL 90739, at *1 (S.D.N.Y. May 23, 1991), *aff'd* 956 F.2d 1160 (2d Cir. 1992) (internal quotation marks omitted).

Petitioner alleges that counsel was ineffective because he "prepared [n]o defense," claiming that counsel's statements that "he can put his feet up, sit back and [r]ead a book, it is up to the prosecutor to prove beyond a reasonable doubt" support this claim. (*See* Pet. at 10.) The Court finds that this is a mischaracterization of counsel's statements. During jury selection, defense counsel emphasized the following:

> Defense has no burden. Defense has absolutely no burden. I have a new book here. I can take it out, put my feet up. Although it would be rude and obnoxious I can do it, but I can sit here and read a book. That's how strong the presumption of innocence is. Mr. Zamani is presumed innocent. He doesn't have to say anything more.

(T. at 129.) These statements by defense counsel are an explanation of the prosecution's burden of proof at trial and do not support petitioner's allegation that his attorney had prepared no defense on his behalf.

Even if petitioner could establish that counsel had erred in some way, petitioner has

---

[12] To the extent that petitioner claims his attorney was constitutionally ineffective because he "[had a] suppression hearing[ ] solely for criminal trespassing" and "never had [a] suppression hearing[ ] for burglary [a]nd robbery," the Court summarily rejects this argument as meritless. (*See* Pet. at 10.) Petitioner's burglary and robbery charges are related to the same incident and pertain to the same evidence as his trespassing charges.

18

not shown that he was prejudiced by counsel's representation. As discussed above, for a petitioner to demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A self-serving post-conviction statement does not, standing alone, establish prejudice." *Hernandez v. Larkin*, No. 12 Civ. 8090 (AJN)(SN), 2013 WL 4453316, at *12 (S.D.N.Y. Aug. 19, 2013). In the instant matter, petitioner received the benefit of a ten year sentence, though he was facing a potential twenty-five year sentence if convicted after trial. Ultimately, "there is no reasonable probability that [p]etitioner would not have taken the plea agreement." *Hayes v. Tracy*, No. 03 Civ. 5237(SLT), 2005 WL 486912, at *6 (E.D.N.Y. Jan. 11, 2005), *see also Feliz v. United States*, No. 01 Civ. 5544(JFK), 2002 WL 1964347, at *7 (S.D.N.Y. Aug. 22, 2002) ("No prejudice exists when a plea agreement lessens the severity of the sentence the defendant would have if convicted at trial.") In sum, petitioner is unable to satisfy either of *Strickland's* prongs, and as such, his ineffective assistance of counsel claims are denied.

### III. CONCLUSION

For the foregoing reasons, this Court finds that the petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. Accordingly, this petition for a writ of habeas corpus is denied in its entirety.

Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and,

therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of the Court shall close this case.

SO ORDERED.

JOSEPH F. BIANCO
United States District Judge

Dated: November 30, 2018
       Central Islip, New York

\* \* \*

Petitioner is proceeding *pro se*, Clinton Correctional Facility, PO Box 2000, Dannemora, NY 12929. Respondent is represented by William T. Hughes, Nassau County District Attorney's Office, 262 Old Country Road, Mineola, NY 11501.

19